UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————x

TEALA DAVIES,                                          Case No. 19 Civ. 10788 (GHW) (DCF)

        Plaintiff,

    -against-

DARREN K. INDYKE and RICHARD D. KAHN,
as EXECUTORS OF THE ESTATE OF JEFFREY E.
EPSTEIN,

        Defendants.

————————————————————————————x


## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS


CUTI HECKER WANG LLP

  Mariann Meier Wang
  Daniel Mullkoff
  305 Broadway, Suite 607
  New York, New York 10007

ALLRED, MAROKO & GOLDBERG

  Gloria Allred
  305 Broadway, Suite 607
  New York, New York 10007

*Attorneys for Plaintiff Teala Davies*

Dated: March 27, 2020
     New York, New York

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

FACTS ................................................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

I.      Defendants' Motion is Premature ................................................................................ 3

II.     Plaintiff's Claims are Timely ...................................................................................... 5

    A.  Plaintiff's Claims are Timely Under New Mexico Law ......................................... 6

    B.  Plaintiff's Claims are Timely Under Florida Law .................................................. 7

    C.  Plaintiff's Claims are Timely Under USVI Law ..................................................... 8

III.    Punitive Damages are Available ................................................................................. 9

    A.  USVI Law Applies to the Question of Punitive Damages ...................................... 9

    B.  Punitive Damages Are Available Under USVI Law .............................................. 12

CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Alain Ellis Living Tr. v. Harvey D. Ellis Living Tr.*, 308 Kan. 1040 (2018) ............................ 17

*Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, No. 03 Civ. 3748 (DAB),
  2006 WL 278138 (S.D.N.Y. Feb. 2, 2006)................................................................... 4

*Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301 (S.D.N.Y. 2010)..................................... 4

*Banks v. International Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011) .......................... *passim*

*Burrell v. State Farm & Cas. Co.*, 226 F. Supp. 2d 427 (S.D.N.Y. 2002) .................................. 5

*Cohen v. Davis*, 926 F. Supp. 399 (S.D.N.Y. 1996)................................................................... 4

*Concepcion v. Virgin Islands Hous. Auth.*, No. CIV 516/1998, 2005 WL 1940152
  (V.I. Super. June 28, 2005) ....................................................................................... 15

*Crabtree ex rel. Kemp v. Estate of Crabtree*, 837 N.E.2d 135 (Ind. 2005)............................... 17

*Denton v. McKee*, 332 F. Supp. 2d 659 (S.D.N.Y. 2004)............................................................ 4

*Doe v. Montefiore Med. Ctr.*, No. 12 Civ. 686 (CM), 2013 WL 624688
  (S.D.N.Y. Feb. 19, 2013) ............................................................................................ 4

*Estate of Farrell ex rel. Bennett v. Gordon*, 770 A.2d 517 (Del. 2001).................................... 13

*Farina v. Metro. Transportation Auth.*, No. 18 Civ. 1433 (PKC)
  2019 WL 3966163 (S.D.N.Y. Aug. 21, 2019) .............................................................. 4

*Fed. Hous. Fin. Agency v. Ally Fin. Inc.*, No. 11 Civ. 7010 (DLC),
  2012 WL 6616061 (S.D.N.Y. Dec. 19, 2012)............................................................. 10

*Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386 (2d Cir. 2001)............................................ 9

*Franzone v. Lask*, No. 14 Civ. 3043 (GHW) (GWG), 2016 WL 4154276,
  (S.D.N.Y. Aug. 5, 2016), *report and recommendation adopted*, 2016 WL 4491730
  (S.D.N.Y. Aug. 25, 2016) ............................................................................................ 5

*Gov't of Virgin Islands v. Connor*, 60 V.I. 597 (V.I. 2014) .............................................. 13, 14

*Grimes-Jenkins v. Consol. Edison Co. of New York*, No. 16 Civ. 4897 (AT) (JCF),
  2017 WL 2258374 (S.D.N.Y. May 22, 2017), *report and recommendation adopted*,
  2017 WL 2709747 (S.D.N.Y. June 22, 2017)............................................................. 4

*Haralson v. Fisher Surveying, Inc.*, 201 Ariz. 1, 31 P.3d 114 (2001) (en banc) ........................ 15

*Hill v. Govt. Employees Ret. Sys.*, No. CV 1118/1992, 1993 WL 13963372
  (Terr. V.I. Feb. 22, 1993), *aff'd*, 866 F. Supp. 880 (D.V.I. 1994).............................................. 8

*Hunter v. Palisades Acquisition XVI*, No. 16 Civ. 8779 (ER), 2017 WL 5513636
  (S.D.N.Y. Nov. 16, 2017) ...................................................................................................... 4

*James v. Powell*, 19 N.Y.2d 249 (1967) .................................................................................. 9, 10

*Joseph v. Hess Oil*, 867 F.2d 179 (3d Cir. 1989) .......................................................................... 8

*King v. Car Rentals, Inc.*, 29 A.D.3d 205 (2d Dep't 2006) ......................................................... 11

*Nat'l Jewish Democratic Council v. Adelson*, No. 18 Civ. 8787 (JPO), 2019 WL 4805719
  (S.D.N.Y. Sept. 30, 2019) ............................................................................................... 10, 11

*Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522 (S.D.N.Y. 2013) .............................. 4

*Omar ex rel. Cannon v. Lindsey*, 243 F. Supp. 2d 1339 (M.D. Fla.),
  *aff'd*, 334 F.3d 1246 (11th Cir. 2003).................................................................................... 8

*Orientview Techs. LLC v. Seven For All Mankind, LLC*, No. 13 CIV. 0538 (PAE),
  2013 WL 4016302 (S.D.N.Y. Aug. 7, 2013) .......................................................................... 5

*Powell v. Chi-Co's Distrib., Inc.*, No. ST-13-TOR-14,
  2014 WL 1394183 (V.I. Super. Apr. 3, 2014) ...................................................................... 13

*Range v. 535 Broadway Grp. LLC*, No. 17 Civ. 0423 (WHP),
  2019 WL 4182966 (S.D.N.Y. Sept. 3, 2019).......................................................................... 3

*Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189 (1985)......................................................... 11

*Underwood v. Roswell Park Cancer Inst.*, No. 15 Civ. 684 (FPG), 2017 WL 131740
  (W.D.N.Y. Jan. 13, 2017) ...................................................................................................... 4

*Weyant v. Phia Grp. LLP*, No. 17 Civ. 8230 (LGS), 2018 WL 4387557
  (S.D.N.Y. Sept. 13, 2018) ...................................................................................................... 4

*William A. Gross Const. Assocs. v. Am. Mfrs. Mut. Ins.*, 600 F. Supp. 2d 587
  (S.D.N.Y. 2009)...................................................................................................................... 4

*Willman v. Zelman & Assocs., LLC*, No. 11 Civ. 1216 (KBF), 2012 WL 811512
  (S.D.N.Y. Mar. 12, 2012) ...................................................................................................... 4

## **Statutes and Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .................................................................................. 3

Federal Rule of Civil Procedure 12(f) ........................................................................................ 5

Fla. Stat. Ann. § 95.11(7) ........................................................................................................ 7, 8

Gretchen Morgenson, "Wealth of Jeffrey Epstein's Brother Is Also a Mystery," *Wall Street
Journal*, Aug. 12, 2019, *available at* https://www.wsj.com/articles/wealth-of-jeffrey-epsteins-
brother-is-also-a-mystery-11565607148 ................................................................................ 16

Landon Thomas, Jr., "Financier Starts Sentence in Prostitution Case," *New York Times*,
July 1, 2008, *available at* https://www.nytimes.com/2008/07/01/business/01epstein.html ...... 16

New Mexico Statutes § 37-1-30(A)(2) ........................................................................................ 6

New York Child Victims Act, N.Y. C.P.L.R. § 214-g ............................................................... 16

Roseanna Sommers, *The Psychology of Punishment and the Puzzle of Why Tortfeasor Death
Defeats Liability for Punitive Damages*, 124 Yale L.J. 1295 (2015) ..................................... 15

Steve Eder and Ali Watkins, "Jeffrey Epstein's Will: He Signed 2 Days Before Killing Himself,"
*New York Times*, Aug. 19, 2019, *available at*
https://www.nytimes.com/2019/08/19/nyregion/jeffrey-epstein-will.html ......................... 3, 11

Plaintiff Teala Davies submits this memorandum of law in opposition to the Motion to Dismiss filed by Defendants Darren K. Indyke and Richard D. Kahn, as Executors of the Estate of Jeffrey E. Epstein (ECF 26). Defendants acknowledge that Plaintiff has stated claims upon which relief may be granted for each of the three causes of action alleged in the Complaint – battery, assault, and intentional infliction of emotional distress – and they do not seek to dismiss any cause of action. Instead, they ask the Court to strike some, but not all, of the allegations regarding incidents in which Epstein assaulted Plaintiff, and to strike Plaintiff's demand for punitive damages. Defendants' motion is both premature and meritless, and the Court should deny it.

## **FACTS**

As described in the Complaint, when Plaintiff Teala Davies was seventeen years old, Jeffrey Epstein preyed upon her, manipulating her to be completely dependent on him and then sexually assaulting her on numerous occasions. (ECF 1.) Teala had a tremendously challenging upbringing, including being homeless for a year when she was eleven and working to support herself beginning when she was fifteen. *Id.* ¶ 30. When she was introduced to Epstein, Teala was seventeen, living in Los Angeles with her older sister and working full-time. *Id.* ¶ 31.

Teala was introduced to Epstein by her sister. Teala's sister told her that Epstein was a generous and wealthy man who often made it possible for people to attend college, and said that Epstein had heard Teala's story and wanted to help her. *Id.* ¶¶ 32-34. Epstein had been manipulating and sexually abusing Teala's sister, but Teala did not know that. *Id.* ¶ 33. In their first meeting, Epstein ordered Teala and her sister to massage his feet, then took them both shopping. *Id.* ¶ 34-35. Epstein often asked about Teala's career goals and how he could help her achieve them. *Id.* ¶ 36. Teala conveyed that her dream was to become a translator, and Epstein

immediately took steps to make that happen, helping her get accepted to study for a semester at the University of Madrid, at Epstein's expense. *Id.* ¶¶ 37-38. Teala believed that her dreams were coming true, and Epstein made sure she felt that it was all his doing. *Id.* ¶ 39. Teala gave up her job and her apartment in anticipation of this life-changing opportunity, leaving her completely dependent on Epstein and his continuing generosity. *Id.* ¶ 40.

Epstein exploited this power over seventeen-year-old Teala to sexually abuse her repeatedly. Ultimately, Epstein raped and sexually assaulted Teala frequently and in a variety of places and settings, including by trafficking her to his homes in New York, New Mexico, Florida, the Virgin Islands, and France. *Id.* ¶¶ 4, 41-58. These assaults caused Teala to feel completely intimidated, fearful and ultimately, worthless. During the assaults, she froze up and began to cry, able to think only about trying to survive. *Id.* ¶ 5.

Epstein continued to exert total control over Teala's life for two more years, trafficking her around the world and sexually abusing her on a frequent basis. Teala felt deep despair and isolation during this time, and she developed a severe and self-destructive eating disorder. Teala confided in Epstein about her eating disorder, as he had ensured that she thought he was the only person in her life whom she could trust. *Id.* ¶¶ 6, 59-60. Rather than help her, however, as soon as Teala told Epstein about her eating disorder, he cast her out. *Id.* ¶¶ 6, 61.

Epstein's abuse destroyed Teala's life. She sank into alcoholism and other self-harm, unable to trust others but not understanding why. *Id.* ¶ 63. Now a working mother of three, she is still struggling to put her life back together. *Id.* ¶ 64. She is still in the nascent stages of understanding the deep and lasting injuries that Epstein's pattern of abuse has caused her, but she feels the effects every day. She feels dysfunctional, on edge, and constantly overwhelmed. She

has difficulty sleeping, has frequent flashbacks to Epstein's sexual assaults, and feels like she is on the verge of a psychological breakdown.  *Id.* ¶ 65.

Epstein was arrested in July 2019.  On August 8, 2019, Epstein changed his will to provide that all of his assets would be conveyed to a trust (of which Defendants Indyke and Kahn are the trustees) and that his estate (the "Estate") be probated in the United States Virgin Islands ("USVI").  Last Will and Testament of Jeffrey E. Epstein, Exhibit A to Declaration of Daniel Mullkoff, March 27, 2020 ("Mullkoff Decl.").  Two days later, on August 8, 2019, Epstein committed suicide while in a federal jail.  *See* Steve Eder and Ali Watkins, "Jeffrey Epstein's Will: He Signed 2 Days Before Killing Himself," *New York Times*, Aug. 19, 2019, *available at* https://www.nytimes.com/2019/08/19/nyregion/jeffrey-epstein-will.html.  The Estate is being probated in the USVI.  *See Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Superior Court of the Virgin Islands).

## ARGUMENT

### I.   Defendants' Motion is Premature

Defendants do not seek to dismiss any of the three causes of action alleged in the Complaint – battery, assault, and intentional infliction of emotional distress.  Instead, they ask the Court to strike some, but not all, of the allegations regarding incidents in which Epstein assaulted Plaintiff, and to strike Plaintiff's demand for punitive damages.  Defendants' Memorandum of Law (ECF 27) ("Defs.' MOL").  Such attempts to strike portions of the pleadings are not the proper subject of a Rule 12(b)(6) motion.  Contrary to the few cherry-picked examples Defendants provide, *id.* at 4-5, the overwhelming majority of decisions in this District have denied motions to dismiss demands for punitive damages as premature on the basis that "[p]unitive damages are a type of damages, not a claim for relief."  *Range v. 535 Broadway*

*Grp. LLC*, No. 17 Civ. 0423 (WHP), 2019 WL 4182966, at *7 n.4 (S.D.N.Y. Sept. 3, 2019);

*Hunter v. Palisades Acquisition XVI*, No. 16 Civ. 8779 (ER), 2017 WL 5513636, at *9 (S.D.N.Y.

Nov. 16, 2017) ("Because punitive damages are a form of damages, not an independent cause of

action, a motion to dismiss a prayer for relief in the form of punitive damages is procedurally

premature.") (citation omitted).[1]

      Moreover, even if Defendants were successful at limiting the number of assaults at issue

in the Complaint, no parties would be dismissed, no causes of action would be dismissed, and the

scope of discovery would remain the same. *See William A. Gross Const. Assocs. v. Am. Mfrs.*

*Mut. Ins.*, 600 F. Supp. 2d 587, 590 (S.D.N.Y. 2009) (holding that, because claims at issue in

motion to dismiss "do not expand the scope of discovery, it makes sense to let these claims

proceed at this stage and revisit them after discovery via a summary judgment motion"); *see also*

*Underwood v. Roswell Park Cancer Inst.*, No. 15 Civ. 684 (FPG), 2017 WL 131740, at *11 n.8

(W.D.N.Y. Jan. 13, 2017) ("The Court is also mindful of the fact that even if some of the actions

described in Dr. Underwood's Amended Complaint are time-barred, the statute of limitations

does not bar him from using those acts 'as background evidence in support of a timely claim.'

Thus, early resolution of all the statute of limitations issues in this case would not have a

---

[1] *See also, e.g., Farina v. Metro. Transportation Auth.*, No. 18 Civ. 1433 (PKC), 2019 WL 3966163, at *31–32 (S.D.N.Y. Aug. 21, 2019); *Weyant v. Phia Grp. LLP*, No. 17 Civ. 8230 (LGS), 2018 WL 4387557, at *11 (S.D.N.Y. Sept. 13, 2018); *Grimes-Jenkins v. Consol. Edison Co. of New York*, No. 16 Civ. 4897 (AT) (JCF), 2017 WL 2258374, at *1 n.3 (S.D.N.Y. May 22, 2017), *report and recommendation adopted*, 2017 WL 2709747 (S.D.N.Y. June 22, 2017); *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 536 (S.D.N.Y. 2013); *Doe v. Montefiore Med. Ctr.*, No. 12 Civ. 686 (CM), 2013 WL 624688, at *7 (S.D.N.Y. Feb. 19, 2013); *Willman v. Zelman & Assocs., LLC*, No. 11 Civ. 1216 (KBF), 2012 WL 811512, at *5 (S.D.N.Y. Mar. 12, 2012); *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 318 & n.5 (S.D.N.Y. 2010); *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, No. 03 Civ. 3748 (DAB), 2006 WL 278138, at *15 (S.D.N.Y. Feb. 2, 2006); *Denton v. McKee*, 332 F. Supp. 2d 659, 667 (S.D.N.Y. 2004); *Cohen v. Davis*, 926 F. Supp. 399, 405 (S.D.N.Y. 1996).

significant effect on the scope of discovery.") (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

Even if Defendants' motion were treated instead as a motion to strike pursuant to Rule 12(f), it still would fail.  *See, e.g.*, *Burrell v. State Farm & Cas. Co.*, 226 F. Supp. 2d 427, 440 (S.D.N.Y. 2002) (denying motion to strike punitive damages because motion "address[es] the relief to which the plaintiffs are entitled rather than the sufficiency of the claims in the pleadings, and it would be premature to address these issues before these claims have been decided"); *see also Orientview Techs. LLC v. Seven For All Mankind, LLC*, No. 13 CIV. 0538 (PAE), 2013 WL 4016302, at *3 (S.D.N.Y. Aug. 7, 2013) (noting "the discretion afforded—and the general disfavor exhibited by—courts when evaluating motions to strike").  Accordingly, Defendants' motion should be denied as premature.

## II.    Plaintiff's Claims are Timely

Even if the Court were to consider the merits of Defendants' motion, it should be denied. Defendants acknowledge that all of Plaintiff's causes of action are viable at least with respect to the sexual abuse to which Jeffrey Epstein subjected her in New York before she turned 18 years old, and thus that no causes of action are subject to dismissal.  Defs.' MOL at 1.  Defendants contend, however, that Plaintiff's allegations with respect to all other incidents of abuse by Jeffrey Epstein are time-barred.  Defendants are incorrect.

As a matter of clarification, contrary to Defendants' incorrect assumption, Plaintiff brings claims only for the sexual abuse that occurred in United States jurisdictions before she turned 18.[2]  Plaintiff's claims arising from the abuse that Epstein inflicted when she was a minor are

---

[2] Plaintiff does not bring claims arising from the sexual assaults to which Epstein subjected her after she turned 18 years old, or for the sexual assault that occurred in France when she was 17.

timely under the respective laws of New Mexico, Florida, and the USVI (in addition to New York).

"The defendant has the burden of proof on a statute of limitations defense in New York," *Franzone v. Lask*, No. 14 Civ. 3043 (GHW) (GWG), 2016 WL 4154276, at *4 (S.D.N.Y. Aug. 5, 2016), *report and recommendation adopted*, 2016 WL 4491730 (S.D.N.Y. Aug. 25, 2016) (citing *Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004)).  Because Defendants cannot meet that burden here, the motion should be denied.

### A.  Plaintiff's Claims are Timely Under New Mexico Law

As alleged in the Complaint, Epstein sexually assaulted Plaintiff at his ranch in New Mexico when she was seventeen years old.  Complaint (ECF 1) ¶¶ 42-45.  Plaintiff's claims arising from that assault are timely under New Mexico law.

As Defendants acknowledge, under New Mexico law, claims arising from childhood sexual abuse are timely if brought within three years from the date that the plaintiff "first disclose[s] the person's childhood sexual abuse to a licensed medical or mental health provider in the context of receiving health care from the provider."  N.M. Stat. § 37-1-30(A)(2); *see* Defs.' MOL at 4.  Plaintiff alleges in the Complaint that she "still has not disclosed her abuse to a licensed medical or mental health care provider in the context of receiving health care from that provider."  ECF 1 ¶ 67.  The fact that Ms. Davies has not yet disclosed her abuse to a medical or mental health provider is not happenstance; it is because she is still struggling to put her life back together from Epstein's years of abuse, including economically so that she can afford a therapist, and "is still just beginning to process and understand the full extent of the injuries that Epstein's abuse had caused her and the connection between Epstein's abuse and the emotional and psychological injuries she had experienced."  *Id.* ¶¶ 64, 68.  Defendants cannot meet their burden

to show that Plaintiff brought her New Mexico claims more than three years after she first disclosed the abuse to a medical or mental health provider.  Accordingly, their motion must be denied with respect to Plaintiff's New Mexico claims.[3]

### B.  Plaintiff's Claims are Timely Under Florida Law

Plaintiff likewise alleges in the Complaint that, when she was seventeen years old, Epstein raped her at his home in Florida.  ECF 1 ¶ 49.  Plaintiff's claims arising from that incident are timely.

Florida law provides that intentional tort claims arising from childhood sexual abuse are timely if brought "within 4 years from the time of discovery by the injured party of *both* the injury *and* the causal relationship between the injury and the abuse, *whichever occurs later*." Fla. Stat. Ann. § 95.11(7) (emphasis added).

As noted above, Plaintiff alleges that she "is still in the nascent stages of understanding the deep and lasting injuries that Epstein's pattern of abuse has caused her . . . ."  ECF 1 ¶ 65. She further alleges that she "is still just beginning to process and understand the full extent of the injuries that Epstein's abuse had caused her and the connection between Epstein's abuse and the emotional and psychological injuries she had experienced."  *Id.* ¶ 68.  Thus, Plaintiff has plainly alleged that she has not yet discovered "the causal relationship between the injury and the abuse," Fla. Stat. Ann. § 95.11(7), and the limitations period therefore has not begun to run.

---

[3] Although there is no basis to do so, if the Court were to conclude that Plaintiff's New Mexico claims were not ripe under New Mexico law because she has not yet disclosed her abuse to a medical or mental health provider, the appropriate remedy would be, at most, to grant Plaintiff leave to amend the Complaint to plead that she has now disclosed the abuse to a medical or mental health provider.  Under no circumstances are Defendants entitled to outright dismissal of these claims, which are or at a minimum soon will be timely.

At a minimum, it is not clear based upon the current record when the limitations period began to run, even if Defendants might eventually be able to demonstrate that it has.  Defendants certainly may explore in discovery when Plaintiff may have discovered the extent of her injuries, and when Plaintiff may have discovered the connection between her abuse and her injuries.  At this juncture, however, Defendants' motion is at best premature.  *See Omar ex rel. Cannon v. Lindsey*, 243 F. Supp. 2d 1339, 1347 (M.D. Fla.), *aff'd*, 334 F.3d 1246 (11th Cir. 2003) (holding that "the statute of limitations issue [under Fla. Stat. Ann. § 95.11(7)] cannot be resolved at this stage of the litigation because such resolution would depend either on facts not yet in evidence or on construing factual ambiguities in the complaint in Defendants' favor, which would be inappropriate").

### C.  Plaintiff's Claims are Timely Under USVI Law

Finally, Plaintiff alleges in the Complaint that, when she was seventeen years old, Epstein sexually assaulted her on his private island in the USVI.  ECF 1 ¶ 50.  Plaintiff's claims arising from that incident are timely as well.

Under USVI law, "application of the equitable 'discovery rule' tolls the statute of limitation when the injury or its cause is not immediately evident to the victim."  *Joseph v. Hess Oil*, 867 F.2d 179, 182 (3d Cir. 1989)).  "The underlying concern of the 'discovery rule' is the ability of the ordinary person to *appreciate the full extent* of his or her injury."  *Hill v. Govt. Employees Ret. Sys.*, No. CV 1118/1992, 1993 WL 13963372, at *2 (Terr. V.I. Feb. 22, 1993), *aff'd*, 866 F. Supp. 880 (D.V.I. 1994) (emphasis added).  As noted above, Plaintiff's allegations make clear that she has still not yet discovered the extent or the depth of the injuries that Epstein has caused, ECF 1 ¶¶ 65, 68, nor has she discovered the extent of the connection between Epstein's abuse and the injuries she has experienced.  *Id.* ¶ 68.  Accordingly, at the pleading

stage, Plaintiff has alleged facts sufficient to show that the USVI's equitable discovery rule applies.

## III.   Punitive Damages are Available

As noted in Section I, *supra*, Defendants' motion should be denied as premature.  But even if the issue of punitive damages were properly before the Court at this juncture, Defendants' motion would fail.  The law of the USVI applies to the question of punitive damages, and, under USVI law, punitive damages are available against the Estate.

### A.   USVI Law Applies to the Question of Punitive Damages

As a preliminary matter, the law of the USVI governs whether punitive damages are available in this case.

In this diversity action, the Court must apply the choice of law rules of the forum jurisdiction – here, New York – to determine which jurisdiction's law applies.  *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001).  It is well-established that, "[u]nder the doctrine of depecage as applied by New York courts, the rules of one legal system are applied to regulate certain issues arising from a given transaction or occurrence, while those of another system regulate other issues."  *Id.* (internal quotation marks omitted).  Courts applying New York choice of law rules have specifically applied the doctrine of depecage to apply one jurisdiction's law to compensatory damages and another jurisdiction's law to punitive damages.  In *James v. Powell*, for example, the New York Court of Appeals explained that, "[a]lthough it is clear that the measurement of compensatory damages is determined by the same law under which the cause of action arises, this is not necessarily true with regard to exemplary damages," and the court proceeded to apply Puerto Rican law to the merits of the claim and to the issue of compensatory damages and New York law to the issue of punitive damages.  19 N.Y.2d 249,

259-60 (1967).  *See also, e.g., Nat'l Jewish Democratic Council v. Adelson*, No. 18 Civ. 8787 (JPO), 2019 WL 4805719, at *6 (S.D.N.Y. Sept. 30, 2019) ("Under the doctrine of depecage, then, the choice-of-law analysis for punitive damages is distinct from the analysis for compensatory damages."); (citations omitted); *Fed. Hous. Fin. Agency v. Ally Fin. Inc.*, No. 11 Civ. 7010 (DLC), 2012 WL 6616061, at *5 (S.D.N.Y. Dec. 19, 2012) ("The New York Court of Appeals has recognized that the doctrine may sometimes require that a plaintiff's demand for punitive damages be analyzed under the law of a state other than the one under whose law the cause of action arises.").

Under New York's choice of law rules, "[p]unitive damages are conduct regulating" and thus, "[a]s a general mat[t]er . . . the law of the place of the tort governs unless there is good reason not to apply the rule of *lex loci delicti*."  *Nat'l Jewish Democratic Council,* 2019 WL 4805719, at *6.  "But under New York law – for punitive damages in particular – a court must consider 'the *object or purpose* of the wrongdoing' to be punished and give controlling weight to the 'law of the jurisdiction with the strongest interest in the resolution of the particular issue presented.'"  *Id.* (quoting *James*, 19 N.Y.2d at 259) (emphasis in original).  "Punitive damages are designed to punish the defendant, not to compensate the plaintiff, and so the choice-of-law inquiry for punitive damages provisions is necessarily defendant-focused."  *Id.* (citation omitted).

Applying that standard, the USVI has a significantly stronger interest than any other jurisdiction with respect to the availability of punitive damages in this case.

First, the Defendants, as executors of the Estate, are domiciled in the USVI, just as Epstein was domiciled in the USVI at the time of his death.  *See* Complaint (ECF 1) ¶ 18.  This weighs in favor of applying USVI law.  *See Nat'l Jewish Democratic Council*, 2019 WL

10

4805719, at *6 (fact that defendant was domiciled in Nevada "points in favor of applying Nevada law").

Second, Epstein purposefully availed himself of the benefits of USVI estate law when he altered his will on August 8, 2019 – just two days before his death – in order to provide that all of his assets would be conveyed to a trust and that his Estate be probated in the USVI.  *See* Mullkoff Decl., Exhibit A; Steve Eder and Ali Watkins, "Jeffrey Epstein's Will: He Signed 2 Days Before Killing Himself," *New York Times*, Aug. 19, 2019, *available at* https://www.nytimes.com/2019/08/19/nyregion/jeffrey-epstein-will.html.  Epstein plainly believed that the probate law of the USVI would be beneficial to the Estate.  *See* First Amended Complaint, *Government of the United States Virgin Islands v. Indyke et al.*, Exhibit B to Mullkoff Decl., ¶ 92 ("Two days before his death, Epstein amended The Trust and his Last Will and Testament.  Upon information and belief, he did so[] as part of a pattern and ongoing effort to conceal and shield his assets from potential recovery by claimants.").  Epstein, and subsequently the Defendant Co-Executors of the Estate, reasonably expected that USVI law would apply to estate-related issues.  *See King v. Car Rentals, Inc.*, 29 A.D.3d 205, 212 (2d Dep't 2006) (discussing relevance of parties' expectations in New York choice-of-law analysis).  Epstein and Defendants should not be permitted to selectively avail themselves of certain benefits of USVI law but avoid those aspects of USVI law that they do not like – especially here, where Epstein's decision to reach out and grab USVI probate law, just two days before his premeditated death, was so plainly purposeful.  *See Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 201 (1985) (holding that, although tort occurred in New York, New Jersey law applied because it "would further [New Jersey's] interest in enforcing the decision of its domiciliaries to accept the burdens as well as the benefits of" New Jersey law).

11

Third, the USVI has made abundantly clear how strong its interest is in making judicial remedies available for the unlawful actions of Epstein and his agents.  A lawsuit that the government of the USVI initiated against the Estate alleges that the USVI was at the center of a years-long pattern of criminal activity by Epstein and his agents of "repeatedly procuring and subjecting underage girls and young women to unlawful sexual conduct, sex trafficking, and forced labor."  Mullkoff Decl., Ex. B ¶ 44.  The USVI's complaint makes clear, in great detail, the profoundly negative impact that Epstein's conduct inflicted on the USVI and the USVI's strong interest in the availability of meaningful consequences.  Mullkoff Decl., Ex. B.  The sexual abuse that Epstein inflicted on Plaintiff when she was a minor was a part of that pattern of unlawful sexual exploitation.  For all of these reasons, the USVI has a substantial interest in the issue of whether punitive damages are available against the Defendants here.

By contrast, the other jurisdictions where the sexual abuse at issue occurred – New York, New Mexico, and Florida – have much weaker interest, if any, in the availability of punitive damages in this case.  Defendants are not domiciled in those jurisdictions, and the Estate is not being probated in those jurisdictions.  Although New York may well have an interest in the application of its Estate, Powers and Trusts Law when New York estates are probated in New York, *see* Defs. MOL at 5-6, any such interest is lacking when an estate has been purposefully domiciled and is being probated in a foreign jurisdiction.

Accordingly, USVI law governs whether punitive damages are available here.

### B.    Punitive Damages Are Available Under USVI Law

Under USVI law, punitive damages are available against the Estate.  As Defendants acknowledge, the USVI Supreme Court has instructed courts to determine Virgin Islands common law by considering the three non-dispositive "*Banks* factors":  "(1) whether any Virgin

Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Gov't of Virgin Islands v. Connor*, 60 V.I. 597, 600 (V.I. 2014) (citation omitted); *see Banks v. International Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011).

With respect to the first factor, unlike New York, New Mexico, or Florida, the USVI has no statutory or common law prohibition of punitive damages against an estate. Rather, USVI case law makes clear that punitive damages may be awarded against any defendant "for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Powell v. Chi-Co's Distrib., Inc.*, No. ST-13-TOR-14, 2014 WL 1394183, at *2 (V.I. Super. Apr. 3, 2014) (citation omitted). Defendants attempt to concoct a prohibition where none exists by arguing that punitive damages may not be awarded against an estate in the absence of express statutory or other authority allowing that. Defs.' MOL at 6-8. But Defendants' reasoning is backwards. USVI law broadly permits punitive damages against all defendants whose conduct meets the legal standard, and Defendants have not pointed to any USVI authority – statutory, judicial, or otherwise – suggesting that there is a special exception for estates. *See Estate of Farrell ex rel. Bennett v. Gordon*, 770 A.2d 517, 521-22 (Del. 2001) (holding that, "in the absence of a specific statutory restriction, there is no basis to bar recovery for punitive damages against the estate of a deceased tortfeasor," and noting that in many of the states that limit such recovery it "is the result of statutory restrictions"). Indeed, the existence of a special statutory exception for estates in New York (and in other jurisdictions) shows that legislatures know how to implement such exceptions if they wish to do so.

In arguing that punitive damages are not available against estates under USVI law,
Defendants rely on Comment a to § 908 of the Restatement (Second) of Torts.  Defs.' MOL at 7,
8.  But there is no basis for Defendants' suggestion that the USVI has adopted § 908 in its
entirety.  *See* Defs. MOL at 7, 8.  The Supreme Court of the USVI has expressly made clear that
the Restatement is not binding on USVI courts.  *See Connor*, 60 V.I. at 600, 602 (explaining that
USVI courts should not "mechanistically follow[] the Restatements" because doing so would
have "the effect of inappropriately delegating the judicial power of the Virgin Islands to the
American Law Institute and to the governments of other jurisdictions, without any regard for
determining the best rules for the Virgin Islands") (citing *Banks*, 55 V.I. at 980).  Defendants
have not cited a single USVI case that relies on the Restatement with respect to the issue of
whether punitive damages are available against estates.  Rather, in the cases Defendants rely on,
USVI courts merely cited the Restatement briefly and in passing regarding two entirely different
punitive damages issues:  the standard governing when punitive damages are available, *see*
Defs.' MOL at 8 (citing cases); and whether punitive damages are available in wrongful death
actions brought *by* estates, Defs.' MOL at 7 (citing cases).  Defendants' reliance on § 908,
Comment a is therefore misplaced.

The availability of punitive damages is further confirmed by the third, "most
important[]," *Banks* factor:  identifying "the soundest rule for the Virgin Islands."  *Connor*, 60
V.I. at 600.  The USVI Attorney General recently weighed in on precisely that question, and
clearly expressed the view that punitive damages should be available against the Estate.
Mullkoff Decl., Ex. B ¶¶ 307-310.  In seeking punitive damages against the Estate, the USVI
stated that "[t]he purpose of punitive damages in the common law is to punish the defendant for
outrageous conduct that is reckless or intentional and to deter others from engaging in such

conduct in the future," and that the intentional conduct alleged is "so egregious, persistent, and injurious that it shocks the conscience and offends a civilized society." *Id.* ¶¶ 307-308.  The USVI further emphasized that "[p]unitive damages are especially important in the case of persons or companies that have so [much] money, assets, and power that mere fines, penalties, and economic damages are simply not sufficient." *Id.* ¶ 309.

The availability of punitive damages against the Estate obviously furthers the rationales for making punitive damages available under USVI law – "to punish the wrongdoer for malicious, outrageous or intentional conduct *and to deter others from similar extreme conduct*." *Concepcion v. Virgin Islands Hous. Auth.*, No. CIV 516/1998, 2005 WL 1940152, at *3 (V.I. Super. June 28, 2005) (emphasis added).  Epstein's decades-long pattern of trafficking children for his use as sexual objects, destroying hundreds of young girls' lives in the process, maximally implicates these rationales, particularly with respect to deterrence of others.  *See Haralson v. Fisher Surveying, Inc.*, 201 Ariz. 1, 4, 31 P.3d 114, 117 (2001) (en banc) ("While a punitive award cannot punish a deceased wrongdoer for his or her reprehensible conduct, it may deter its future occurrence by others.") (citation omitted); Roseanna Sommers, *The Psychology of Punishment and the Puzzle of Why Tortfeasor Death Defeats Liability for Punitive Damages*, 124 Yale L.J. 1295, 1297-1300 (2015) (arguing that permitting punitive damages against estates furthers the goal of general deterrence).

By contrast, the primary rationale that some jurisdictions give for precluding punitive damages against estates – that, "in allowing punitive damages against the deceased's heirs, innocent parties are punished," *Haralson*, 201 Ariz. 1 at 3 (citing cases) – is not present here.  The only heir listed in Epstein's will –  Epstein's brother, Mark Epstein – knew or reasonably should have known about Epstein's abusive behavior toward minor girls like Plaintiff.  For

example, Mark Epstein owned the apartment building at 301 East 66th Street in Manhattan where Epstein arranged for Plaintiff, along with many of the other girls he sexually abused, to stay for periods of time. *See* Complaint, (ECF 1) ¶ 56; Gretchen Morgenson, "Wealth of Jeffrey Epstein's Brother Is Also a Mystery," *Wall Street Journal*, Aug. 12, 2019, *available at* https://www.wsj.com/articles/wealth-of-jeffrey-epsteins-brother-is-also-a-mystery-11565607148. Mark Epstein was on notice of Jeffrey Epstein's predatory behavior towards minor girls since, at the very least, 2008, when Jeffrey Epstein was criminally charged in connection with soliciting minor girls for sexual acts, and pleaded guilty to charges that required him to register as a sex offender. *See* Landon Thomas, Jr., "Financier Starts Sentence in Prostitution Case," *New York Times*, July 1, 2008, *available at* https://www.nytimes.com/2008/07/01/business/01epstein.html. Accordingly, the policy rationale that punitive damages against an estate would unjustly punish "innocent heirs" has no application here.

The circumstances of Epstein's will, and of his suicide, further justify the imposition of punitive damages against the Estate. As noted above, Epstein changed his will just two days before he committed suicide. The New York Child Victims Act, N.Y. C.P.L.R. § 214-g, had been signed into law on February 14, 2019, and the one-year period in which previously time-barred civil claims arising from child sexual abuse were revived began on August 14, 2019. *See* http://nycourts.gov/courthelp//Safety/childSexAbuseCases.shtml. Thus, Epstein was well aware that he would soon face a flurry of civil lawsuits arising from his pattern of child sexual abuse, and that he faced massive liability, including punitive damages. Indeed, on July 22, 2019, Epstein was served in jail with a lawsuit filed by one of the women he abused, seeking pre-action disclosure and including a draft complaint under the New York Child Victims Act. *See Araoz v. Epstein,* Index No. 156728/2019 (Supreme Court, New York Cnty.); Mullkoff Decl., Ex. C

(Affirmation of Service).  Epstein chose to take his own life rather than face the civil and criminal consequences of his actions.  In these circumstances, the public interest plainly weighs against shielding the Estate from punitive damages.  To the contrary, punitive damages against the Estate are necessary to deter others from cynically choosing the same course that Epstein did. *See Crabtree ex rel. Kemp v. Estate of Crabtree*, 837 N.E.2d 135, 139 (Ind. 2005) (noting that, although Indiana bars punitive damages against estates, the court might decline to apply that bar "[i]f we ever encounter a case where a tortfeasor seems to have considered his own death as an escape from punitive damages incident to some intentional tort").

Defendants are correct that a majority of jurisdictions do not permit punitive damages against estates.  Defs.' MOL at 7-8.  But "at least 14 of the cases adopting th[at] position . . . reached that conclusion because their respective state legislatures had passed a statute stating that position."  *Alain Ellis Living Tr. v. Harvey D. Ellis Living Tr.*, 308 Kan. 1040, 1046 (2018).  And courts in at least nine jurisdictions have adopted a rule that punitive damages are available against estates.  *Id.* at 1053.  Accordingly, the second *Banks* factor weighs, at most, only slightly against the availability of punitive damages.  Given that the first and third *Banks* factors weigh so strongly against Defendants' position, the fact that the second *Banks* factor may weakly support it does not entitle Defendants to the relief they seek here.

For all of these reasons, USVI law permits Plaintiff to seek punitive damages against the Estate.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion.

Dated:  March 27, 2020
        New York, New York

                                        CUTI HECKER WANG LLP


                                        By: ____/s/ Mariann Meier Wang____
                                            Mariann Meier Wang
                                            Daniel Mullkoff
                                            305 Broadway, Suite 607
                                            New York, New York 10007
                                            (212) 620-2603
                                            mwang@chwllp.com
                                            dmullkoff@chwllp.com

                                        ALLRED, MAROKO & GOLDBERG
                                        Gloria Allred
                                        305 Broadway, Suite 607
                                        New York, New York 10007
                                        (212) 202-2966

                                        *Attorneys for Plaintiff*